**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| WALTER HIDALGO,<br>　　　　Plaintiff,<br>　　v.<br>TESLA MOTORS, INC,<br>　　　　Defendant. | Case No. 5:15-cv-05185-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**<br><br>[Re: ECF 16] |

Defendant Tesla Motors, Inc. moves to compel arbitration of Plaintiff Walter Hidalgo's claims and stay this litigation while arbitration is in process. *See* Mot. at 7, ECF 16. Because the arbitration agreement between Tesla and Hidalgo is valid and encompasses the claims raised in Hidalgo's lawsuit, Tesla's motion is GRANTED.

**I.　BACKGROUND**

In November 2012, Tesla extended Hidalgo an offer of employment. *See* Copher Decl. Ex. A, ECF 16-2. Tesla employee John Pardo emailed Hidalgo his formal offer letter, which was a four-page PDF document attached to Pardo's email. *See* Petry Decl. ¶ 2, ECF 19-1. Page two of the offer letter states,

> To ensure the rapid and economical resolution of disputes that may arise in connection with your employment with Tesla, you and Tesla agree that any and all disputes, claims, or causes of action, in law or equity, arising from or relating to your employment, or the termination of your employment, will be resolved, to the fullest extent permitted by law by binding arbitration per Attachment A, and that *you are waiving your right to a jury trial*.

Petry Decl. Ex. A at 5, ECF 19-2 (emphasis original). Page three of the offer letter contains signature and date lines for Hidalgo to indicate his acceptance of the letter. *See id.* at 6. Page four of the PDF is titled "ARBITRATION AGREEMENT" and sets forth the terms of the arbitration agreement. *See id.* at 7. In relevant part, the arbitration agreement states,

> [Y]ou and Tesla agree to an arbitration in which:
>
> a. **you are waiving any and all rights to a jury trial** but all court remedies will be available in arbitration; and
>
> b. all disputes between you and the Company shall be fully and finally resolved by binding arbitration that provides for adequate discovery; and
>
> c. all disputes shall be resolved by a neutral arbitrator who shall issue a written opinion; and
>
> d. Tesla shall pay all arbitration fees in excess of those which would be required if the dispute was filed in a court of law.
>
> Nothing in this Agreement is intended to prevent either you or Tesla from obtaining injunctive relief in court . . . .

*Id.* (emphasis original). After receiving the offer letter, Hidalgo signed and dated the letter on page three and emailed the first three pages of the offer letter back to Pardo, but not the fourth. *See* Hidalgo Decl. ¶ 4, Ex. A, ECF 18-2.

The parties agree that Hidalgo received at least the first three pages of the offer letter in Pardo's email, but disagree as to whether he received the fourth page. *See* Opp. at 2, ECF 18; Reply at 2, ECF 19. In his declaration supporting his opposition to Tesla's motion, Hidalgo originally stated that he "never received the last page (page four) of the employment agreement . . . entitled 'Attachment A – Arbitration Agreement.'" Hidalgo Decl. ¶ 3. He also stated that he "did not know at any time that any dispute [he] had with Tesla would be arbitrated," and that although he "now see[s] a small paragraph on page two of the employment offer, however, [he] did not see that when [he] signed the offer letter and neither [his] signature nor [his] initials are anywhere near that paragraph. Most importantly, [he] never received the Attachment A that paragraph is referencing." *Id.* ¶ 6. In response, Tesla submitted a reply declaration from Jeff Petry, Senior Information Security Engineer at Tesla, which stated that Petry had retrieved Pardo's original email to Hidalgo and its attachment from an Enterprise Vault email archive. *See* Petry Decl. ¶¶ 1-3. The attachment contains all four pages of the offer letter, including the arbitration agreement on page four. *See* Petry Decl. Ex. A. Hidalgo then amended his declaration to state, "I do not recall receiving the last page (page four) of the employment agreement . . . entitled 'Attachment A – Arbitration Agreement.'" Amended Hidalgo Decl. ¶ 4, ECF 20. While Hidalgo

2

maintains that he did not see the arbitration clause on page two when he signed the offer letter, he amended his declaration to state that he "do[es] not recall receiving the Attachment A that the paragraph on page two is referencing." *Id.* ¶ 8.

Hidalgo's employment with Tesla ended in February 2015. *See* Copher Decl. ¶ 4. In September 2015, he sued Tesla in the Superior Court of California for the County of Santa Clara, alleging violations of several state and federal employment laws. *See* Copher Decl. Ex. A, ECF 1. Tesla removed the case to this Court and moves to compel arbitration and stay litigation pending the arbitration. *See* Notice of Removal, ECF 1; Mot. at 7.

## II.  LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the enforceability and scope of an arbitration agreement. *See* 9 U.S.C. §§ 1 *et seq.* Under the FAA, a party seeking to invoke an arbitration agreement may petition the district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4; *see also Trompeter v. Ally Financial, Inc.*, 914 F. Supp. 2d 1067, 1071 (N.D. Cal. 2012).

When resolving a motion to compel arbitration, the Court engages in a limited two-part inquiry: first, it determines whether the arbitration agreement is valid, and second, it determines whether the agreement encompasses the claims at issue. *See, e.g.*, *Mitsubishi Motors Co. v. Soler Chrysler–Plymouth*, 473 U.S. 614, 627–28 (1985); *see also Trompeter*, 914 F. Supp. 2d at 1071. The FAA dictates that arbitration agreements are "a matter of contract," and "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9. U.S.C. § 2.

## III.  DISCUSSION

Tesla argues that the arbitration agreement is valid, is not unconscionable, and encompasses Hidalgo's claims, and so it should be enforced. *See* Mot. at 3-6. Hidalgo challenges the validity of the arbitration agreement, but not whether it encompasses his claims. *See* Opp. at 3-7. He argues that the arbitration agreement is both procedurally and substantively unconscionable and thus is not binding. *See id.*

### A.  Unconscionability

Unconscionability refers to "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015). Unconscionability has both procedural and substantive elements and "is a valid reason for refusing to enforce an arbitration agreement." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). Both procedural and substantive unconscionability must be present before a court may refuse to enforce a contract, but they need not be present to the same degree. *Armendariz*, 24 Cal. 4th at 114. A sliding scale applies such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

### 1. Procedural Unconscionability

Procedural unconscionability requires both oppression and surprise. *Armendariz*, 24 Cal. 4th at 114. Hidalgo argues that both requirements are satisfied because he was unable to negotiate the terms of his employment contract; the arbitration clause was "hidden in the fourth paragraph on page two" of his offer letter and did not contain any space near it for Hidalgo to sign or initial to indicate that he had read that clause; and the actual arbitration agreement was on a separate piece of paper, which he did not receive and which does not have his signature or initials on it. *See* Opp. at 5-6. These arguments are partially successful: while the oppression element is satisfied, the surprise element is not.

Procedural unconscionability focuses on the "manner in which the contract was negotiated and the circumstances of the party at the time," *Kinney v. United Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (Ct. App. 1999), and is composed of two factors: oppression and surprise "due to unequal bargaining power." *Armendariz*, 24 Cal. 4th at 114. Oppression derives from a lack of "real negotiation and an absence of meaningful choice," and surprise arises from the terms of the bargain being "hidden in a prolix printed form," *Bruni v. Didion*, 160 Cal. App. 4th 1272, 1288 (2008), or drafted in "fine-print terms," *Sanchez*, 61 Cal. 4th at 911.

The oppression element of procedural unconscionability is satisfied here. The threshold question in procedural unconscionability is "whether the arbitration agreement is adhesive."

4

*Armendariz*, 24 Cal. 4th at 113. A contract of adhesion is "a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (Ct. App. 2001). "Under current California law, it is unclear whether a contract of adhesion is inherently oppressive, and therefore automatically procedurally unconscionable, or whether oppression is a separate element that must be present." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006). But "both standards . . . are satisfied by a finding that the arbitration provision was presented on a take-it-or-leave-it basis and that it was oppressive due to 'an inequality of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.'" *Id.* (quoting *Flores*, 93 Cal. App. 4th at 853). Hidalgo argues that he was "unable to engage in real negotiation" when entering into the contract with Tesla. Opp. at 5. Tesla does not contest this argument, and so the oppression requirement is satisfied.

The requirement of surprise, however, is not. Despite Hidalgo's statement that he recalls neither reading the arbitration clause in page two of his offer letter nor receiving the arbitration agreement on page four, the original attachment Pardo e-mailed to him includes both the arbitration clause and the full arbitration agreement. *See* Amended Hidalgo Decl. ¶¶ 4, 8; Petry Decl. Ex. A. This indicates that he received the full offer letter, whether or not he remembers reading it. Furthermore, the arbitration agreement is neither "hidden in a prolix printed form," *Bruni*, 160 Cal. App. 4th at 1288, nor drafted in "fine-print terms," *Sanchez*, 61 Cal. 4th at 911. The entire offer letter is a short, four-page document, and the arbitration clause is printed on the second page and the full terms of the arbitration agreement are printed on the fourth page. *See* Petry Decl. Ex. A at 5, 7. Both the arbitration clause and the arbitration agreement are printed in 12-point type, and the arbitration agreement is clearly labeled as an "ARBITRATION AGREEMENT" in boldface, all-caps type. *See id.* It is irrelevant that Hidalgo did not sign or initial the arbitration clause or the arbitration agreement; Hidalgo identifies no cases supporting such a requirement. Moreover, Hidalgo signed the contract in the space provided on page three and returned it to Tesla by the required deadline, indicating that he "[chose] to accept [Tesla's] offer under the terms described above," which included the arbitration clause. *See* Hidalgo Decl.

5

Ex. A at 4, 7, ECF 18-2. Finally, even if Hidalgo did not read the arbitration clause or the arbitration agreement, that does not make it procedurally unconscionable. "When a person with the capacity of reading and understanding an instrument signs it, he may not, in the absence of fraud, coercion or excusable neglect, avoid its terms on the ground he failed to read it before signing it." *Bolanos v. Khalatian*, 231 Cal. App. 3d 1586, 1590 (Ct. App. 1991).

### 2. Substantive Unconscionability

Hidalgo argues that the substantive unconscionability requirement is satisfied because the arbitration clause produces overly harsh and one-sided results. *See* Opp. at 6-7. It does so by preventing him from litigating his damages before a court or jury. *See id.* at 6. It also references the rules that will govern the arbitration, but does not set forth the rules themselves. *See id.* at 6-7. These arguments are unsuccessful.

Substantive unconscionability focuses on the "terms of the agreement and whether those terms are so one-sided as to shock the conscience." *Kinney*, 70 Cal. App. 4th at 1330. An arbitration provision is substantively unconscionable if it is "overly harsh" or generates "one-sided results." *Armendariz*, 24 Cal. 4th at 114. The arbitration agreement here is neither. First, it is bilateral and applies equally to Hidalgo and Tesla. *See* Petry Decl. Ex. A at 7 (binding both Hidalgo and Tesla to resolving employment disputes through arbitration, and setting forth the terms of the arbitration). Second, it satisfies the requirements set forth for a lawful arbitration agreement in *Armendariz*, 24 Cal. 4th at 102 (quoting *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1482 (D.C. Cir. 1997)): it provides for "all court remedies," "adequate discovery," a "neutral arbitrator," and a "written opinion," and requires Tesla to pay "all arbitration fees" beyond those that would be required if the dispute were filed in a court. Petry Decl. Ex. A at 7. Hidalgo provides no case law supporting his position that the arbitration clause is substantively unconscionable simply because it prevents him from litigating his damages before a court or jury. *See* Opp. at 6.

Tesla's reference to the rules of the Judicial Arbitration and Mediation Services/Endispute, Inc. ("JAMS") does not make the arbitration agreement substantively unconscionable, either. Hidalgo relies on *Trivedi v. Curexo Tech. Corp.*, which notes that "[n]umerous cases have held

6

1  that the failure to provide a copy of the arbitration rules to which the employee would be bound
2  supported a finding of procedural unconscionability." 189 Cal. App. 4th 387, 393 (Ct. App. 2010)
3  (citing cases). But in *Trivedi* and each of the decisions it cites, the plaintiff's unconscionability
4  claim "depended in some manner on the arbitration rules in question. . . . These cases thus stand
5  for the proposition that courts will more closely scrutinize the substantive unconscionability of
6  terms that were 'artfully hidden' by the simple expedient of incorporating them by reference rather
7  than including them in or attaching them to the arbitration agreement." *Baltazar v. Forever 21*,
8  Inc., 62 Cal. 4th 1237, 1246 (2016). In *Baltazar*, the California Supreme Court held that an
9  argument based on Forever 21's incorporation by reference of the mediation rules might have
10 force if Baltazar's unconscionability challenge "concerned some element of the AAA rules of
11 which she had been unaware when she signed the arbitration agreement." *Id.* But because her
12 challenge to the agreement concerned "only matters that were clearly delineated in the agreement
13 she signed," Forever 21's failure to attach the AAA rules "[did] not affect [the Court's]
14 consideration of Baltazar's claims of substantive unconscionability." *Id.* Hidalgo's challenge
15 similarly has nothing to do with the JAMS rules and concerns only matters that were clearly
16 delineated in the offer letter he signed. Tesla's failure to attach the JAMS rules therefore does not
17 make the arbitration agreement substantively unconscionable. *See id.*

### 3. Conclusion

In order for the Court to void the arbitration agreement as unconscionable, both procedural and substantive unconscionability must be satisfied. While the arbitration agreement here is mildly procedurally unconscionable, it is not substantively unconscionable, and it therefore is valid and enforceable. The arbitration agreement plainly encompasses the claims at issue— Hidalgo raises only claims relating to his employment, which the agreement covers. *See* Copher Decl. Ex. A, ECF 1; Petry Decl. Ex. A at 6.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Tesla's motion to compel arbitration and stay litigation is GRANTED. Within seven days of the resolution of the arbitration, the parties shall file a joint status report advising the Court of the resolution of the

1   matter and any further action required by the Court.

2   **IT IS SO ORDERED.**

4   Dated: June 29, 2016

    _____
    BETH LABSON FREEMAN
    United States District Judge